IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MOTOWN RECORD COMPANY, L.P., et al., <br>         Plaintiffs, <br>    v. <br><br> JOHN C. KOVALCIK, <br>         Defendant. | CIVIL NO. 07-CV-4702 |

**MEMORANDUM OPINION AND ORDER**

RUFE, J.                                                                                                    February 23, 2009

      Before the Court is Plaintiffs' Motion to Dismiss Defendant's Counterclaims. In their Amended Complaint, Plaintiffs Motown Record Company, L.P., UMG Recordings, Inc., Zomba Recording LLC, SONY BMG Music Entertainment, and Elektra Entertainment Group, Inc. (collectively "Plaintiffs") allege infringement of various copyrights and exclusive rights under 17 U.S.C. § 505 against Defendant John Kovalcik ("Defendant"). Defendant has asserted six counterclaims against Plaintiffs including Trespass to Chattels; Computer Fraud and Abuse under 18 U.S.C. § 1030; Abuse of Process; Defamation of Character; Declaratory Judgment; and Civil Conspiracy. Plaintiffs seek the dismissal of each of Defendant's Counterclaims.  For the reasons listed below, the Court will grant Plaintiffs' Motion to Dismiss.

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiffs are each copyright owners or licensees of exclusive rights under United States

law with respect to certain copyrighted sound recordings.[1]  Among the rights held by Plaintiffs are the exclusive rights to reproduce and distribute to the public recordings for which they hold a valid certificate of Copyright Registration.[2]

Peer-to-peer ("P2P") file copying networks allow individual internet users to unlawfully distribute copyrighted sound recordings.  P2P online distribution systems enable internet users to search for files stored on other users' computers and transfer exact copies of those recordings from one computer to another via the internet.[3]  Users of P2P networks are identifiable via the Internet Protocol ("IP") address unique to each computer and accessible during the transfer of a file from one computer to another.  On November 8, 2007, Plaintiffs filed what is known as a "John Doe" Complaint for copyright infringement, stating that they had identified an IP address over which illegal file sharing was taking place, but had not yet identified the individual associated with that IP address.[4]  On the same date the Court granted Plaintiffs' Standing Order for Discovery specifically requesting permission to serve subpoenas to those entities capable of matching specific IP addresses to the individuals and their computers.[5]

One of the entities served a subpoena was the University of Pennsylvania, where Defendant is enrolled as a student. Via his IP address, on June 21, 2007 Plaintiffs believe that they were able to identify Defendant as having used a P2P network to download and distribute

---

[1] Am. Compl. ¶ 11.

[2] Am. Compl. ¶ 12.

[3] Am. Compl. ¶ 13.

[4] See "John Doe" Compl. [Doc. No 1].

[5] See Second Amended Standing Order for Immediate Discovery [Doc. No. 2].

sound recordings for which they hold the copyright. Plaintiffs believe and allege that Defendant's continuous and ongoing acts of downloading and distributing copyrighted materials is ongoing.[6]

Because Defendant was on notice that the sound recordings were copyrighted materials by virtue of the notices of copyright that appear on the widely available published copies of each sound recording, Plaintiffs allege that Defendant committed willful and intentional copyright infringement and are therefore entitled to statutory damages pursuant to 17 U.S.C. § 504(c). Moreover, Plaintiffs seek injunctive relief under 17 U.S.C. §§ 502 and 503 as well as attorneys fees and costs pursuant to 17 U.S.C. § 505.[7]

Defendant submitted an Amended Answer containing general denials, affirmative defenses and six counterclaims. Defendant contends that he is in the Eastern District of Pennsylvania during the school year, but maintains a permanent residence in Massachusetts.[8] Defendant alleges that Plaintiffs, who did not write or record the songs in question, have not demonstrated copyright ownership or registration.[9] Claiming that the record companies such as Plaintiffs have been abusing the federal court system, Defendant alleges that they use unlicensed investigators to illegally invade personal computers and obtain IP addresses.[10] Defendant further alleges that Plaintiffs routinely target university students with so-called "John Doe" lawsuits filed for the sole purpose of activating the discovery powers of the court system to match unnamed

---

[6] Am. Compl. ¶¶ 14, 15.

[7] Am. Compl. ¶¶ 18, 19.

[8] Answer, Facts Common to Counterclaims ¶ 2.

[9] Answer ¶ 4.

[10] Answer ¶ 5.

individuals with known IP addresses.[11] According to Defendant, once Plaintiffs have matched individuals to IP addresses, they then provide those names to a "Settlement Support Center," whose sole purpose is to contact prospective defendants and threaten them with a federal lawsuit in order to extract a settlement payment.[12]

Defendant argues that in order to enhance their leverage to acquire settlement agreements, Plaintiffs file a number of federal suits, such as the one brought against Defendant, as an intimidation tactic that creates a concerted pattern of "sham litigation.[13] Plaintiffs' true intent is not to obtain legal relief, claims Defendant, but to "intimidate, harass, and oppress the Defendant and other users of computer networks" using the same boilerplate complaint against tens of thousands of defendants.[14] Furthermore, Defendant argues that he was not physically in Pennsylvania at the time the alleged illegal transfer of music took place and Plaintiffs have not observed any specific instance of Defendant illegally downloading files.[15] According to Defendant he has never configured any computer to publicly share files and that Plaintiffs never obtained permission to gather information from his computer.[16] Based on the foregoing facts Defendant alleges six counterclaims against Plaintiffs including Trespass to Chattels; Computer Fraud and Abuse under 18 U.S.C. § 1030; Abuse of Process; Defamation of Character;

---

[11] Answer ¶ 6.

[12] Answer ¶ 8.

[13] Answer ¶¶ 9-10.

[14] Answer ¶¶ 12-13.

[15] Answer at ¶¶ 17-18.

[16] Answer at ¶¶ 19-20.

Declaratory Judgment; and Civil Conspiracy. [17]

## II.    LEGAL STANDARD

### A.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.[18]  The United States Supreme Court has recently clarified this standard of review, explaining that "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" without the allegation of sufficient facts in support.[19]  In order to survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[20]  A court may grant a 12(b)(6) motion only "if it appears to a certainty that no relief could be granted under

---

[17] Plaintiffs have filed a Motion for Leave to File a Response to Defendant's Reply to the Motion to Dismiss Counterclaims. In turn, Defendant filed a Motion in Opposition, citing Plaintiffs' failure to comply with the Court's rules and procedures.  Plaintiffs' Motion for Leave to File a Reply is denied as untimely.  Plaintiffs did not file the required Motion for Leave to File a Reply and the attached Reply until August 20, 2008, 41 days after Defendant's Response was filed.  The Court requires that parties wishing to file a Reply file a Motion for Leave to File with the Reply attached within ten (10) days of the memoranda to which the Reply responds. Plaintiffs argue that they were unaware that any such rule existed. The Eastern District of Pennsylvania's Federal Practice Rules Annotated, which includes the policies and procedures of each judge, is readily available both in print and via the District's Web site.  Parties who come before the Court are obliged to be aware of and follow such rules.  As rightly pointed out in Defendant's Objections to the Motion for Leave to File, Plaintiff failed to avail themselves of and follow the Court's procedures and the Motion for Leave to File is denied.

[18] Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

[19] Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

[20] Id..

any set of facts which could be proved."[21]

### III. DISCUSSION

#### A. TRESPASS TO CHATTELS (COUNT I)

Defendant alleges that Plaintiffs "intentionally and without authorization, intruded into a personal computer to obtain information," depriving Defendant of the use and possession of his computer.[22] In determining whether a tort committed in the Commonwealth of Pennsylvania such as trespass to chattel has occurred the Court is bound by the state's definition of that tort. "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel; or (b) using or intermeddling with chattel in the possession of another.[23] Essentially, the elements required for trespass to chattel are the same elements required for copyright infringement in a file sharing context. To this end, a court of this district has spoken directly to the question of whether conversion and trespass to chattel are viable claims against a copyright infringement action. "The tests for these claims require nothing more than what is required under copyright law to establish infringement."[24] The court goes on to state, "These claims are preempted under 17 U.S.C, § 301(a)."[25]  The Court agrees that the elements required for a claim of trespass to chattel

---

[21] D.P. Enter. Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

[22] Answer, Counterclaims, ¶¶ 25, 26.

[23] Pestco v. Associated Products, Inc., 880 A.2d 700 (Pa Super Ct.) (citing Restatement of 2d Torts § 217).

[24] Healthcare Advocates Inc. v. Harding, Earley, Follmer, & Frailey, 497 F. Supp. 2d 627, 650 (E.D. Pa. 2007)

[25] Id. 17 U.S.C. § 301(a) states that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come with the subject matter of copyright as specified by sections 102 and 103. . . . are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

are indeed the same elements required to establish copyright infringement of music files shared over computers, and therefore is allowed by the federal statute in situations such as the current context. A claim of trespass to chattel is preempted by federal statute and therefore Count I of Defendant's Counterclaims will be dismissed.[26]

### B. COMPUTER FRAUD AND ABUSE (18 U.S.C. 1030) (COUNT II)

In his second counterclaim, Defendant asserts that as an "investigative precursor to their sham litigation" Plaintiffs accessed Defendant's computer system without authorization and obtained information from that computer system in violation of Defendant's rights.[27] Defendant alleges that such accessing of a computer without authorization is in violation of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act ("CFAA") because Plaintiffs intended to defraud Defendant and have caused damages in an amount exceeding $5,000.[28]

The Third Circuit has determined that a claim under 18 U.S.C. § 1030(a)(4)[29] has four elements: "(1) a defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and 'with intent to defraud; and (4) as a result has furthered the intended fraud and obtained anything of value."[30] In the instant case Defendant's Counterclaim has done little more than reiterate the

---

[26] See also Dun & Bradstreet Software Servs. v. Grace Consulting., Inc., 307 F.3d 197, 217 (3d Cir. 2002).

[27] See Answer, Counterclaims, ¶ 30.

[28] Id. at ¶¶ 31-32.

[29] Defendant does not identify the specific section of the Computer Fraud and Abuse Act that Plaintiffs have allegedly violated. However, the Court has determined that § 1030(a)(4) is the most applicable to the facts of this case.

[30] P.C. Yonkers Inc. v. Celebrations the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005).

language of the statute. Under the standard set forth by the Supreme Court in Twombly that pleadings require more than "labels and conclusions, and a formulaic recitation of the elements," Defendant has not properly plead the elements of his counterclaim.[31]

Defendant fails to allege or support with any facts that his computer was "protected" in any way. Regardless, because Defendant was using the program Limewire on the computer in question and because the files Plaintiff allegedly accessed were contained in the "share" folder, any allegation that the computer should be considered private or "protected," would be tenuous as best. The fact that the accessed files were in the share folder negates the second element under the statute that Plaintiffs acted without authorization or exceeded the authorization given to them. No authorization was needed since the files accessed were accessible to the general public. No files other than those contained in Defendant's "share" file are relevant to Defendant's Counterclaims. Defendant does make sufficient allegations as to the third factor of whether Plaintiffs "knowingly" accessed Defendant's computer with an intent to defraud specifically claiming that access to the files were sought as part of a larger extortion scheme; however, merely alleging one of four statutory elements is not enough.[32] With regard to the fourth factor, that the computer invasion must have yielded something of value, Defendant offers no facts or allegations of specific damages of any value, nor anything that totals an amount exceeding $5,000.[33]

---

[31] Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

[32] 18 U.S.C. 1030(e)(8)(A) defines damages as losses over a one year period "aggregating at least $5,000 in value." Defendant offers no specific damages or reasons as to how he arrived at a total amount of damages relating to the alleged fraud exceeding the $5,000 requirement.

[33] 18 U.S.C. 1030(e)(8)(A) defines damages as losses over a one year period "aggregating at least $5,000 in value." Defendant offers no specific damages or reasons as to how he arrived at a total amount of damages relating to the alleged fraud exceeding the $5,000 requirement.

Defendant's Counterclaim for Computer Fraud and Abuse under the CFAA has failed to state a claim upon which relief can be granted and therefore will be dismissed.

### C.   ABUSE OF PROCESS (COUNT III) <u>NOERR-PENNINGTON</u> DOCTRINE

Defendant lodges a counterclaim of abuse of process against Plaintiffs. He grounds his allegation of abuse of process on the contention that Plaintiffs knew that their investigation of copyright infringement was flawed because they could not positively identify infringers.[34] Defendant further alleges that the "John Doe" action originally filed against him by Plaintiffs was merely a ruse to obtain an *ex parte* subpoena and to force his university to disclose protected information about him[35] and that any and all action against him was taken to induce settlement with other parties against whom the Plaintiffs have also filed copyright infringement actions.[36]

Plaintiffs argue that Defendant's counterclaim of abuse of process is barred by the <u>Noerr-Pennington</u> Doctrine, which protects a company's rights to lobby the government for redress in order to protect business interests.[37] Traditionally, the <u>Noerr-Pennington</u> Doctrine is applied in an anti-trust context; however, because it is based on the First Amendment right to petition courts, the Supreme Court has since extended the doctrine to include all types of government entities, including the courts.[38] Plaintiffs argue that their action, in particular their original "John Doe"

---

[34] Answer, Counterclaims ¶ 37.

[35] Answer at ¶ 36.

[36] Answer at ¶ 39.

[37] Plaintiffs also argue that Defendant's defamation and civil conspiracy claims are barred by the Noerr-Pennington Doctrine, but the Court will only address the counterclaim of abuse of process as it relates to the <u>Noerr-Pennington</u> analysis.

[38] <u>See</u> <u>California Motor Transport Co. v. Trucking Unlimited</u>, 404 U.S. 508 (1972). See also Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (E.D. Pa. 1988). "The rule that liability cannot be

action against the Defendant is the exact conduct that Noerr-Pennington is meant to protect and that Defendant makes no specific allegations of abuse of process other than generalist statements that the action is meant to "harass and threaten" Defendant in an effort to induce a settlement.[39]

Defendant specifically alleges that Plaintiffs' efforts to obtain a subpoena was an abuse of process.[40] Plaintiffs obtained the subpoena in order to identify the user of the IP address which was being used for illegal file sharing. That subpoena was obtained through proper procedures; the Court granted the request for such specific discovery. Plaintiffs used the appropriate legal channels to seek information regarding the identity of the owner of the IP address, and did so in accordance with the limitations of the subpoena.[41] The Court agrees that Plaintiffs have a right to protect their business interests, which in this case comes in the form of copyright and have done so within the boundaries of the law and Court-sanctioned procedures.[42] Therefore, Defendant's counterclaim of abuse of process is barred by the Noerr-Pennington Doctrine.

Defendant further argues that the Noer-Pennington Doctrine does not apply to the instant case because Plaintiffs' case is based on "sham litigation." Defendant is correct that Noerr-Pennington does not apply "to petitions or lawsuits that are mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a

---

imposed for damage caused by inducing legislative, administrative, or judicial action is applicable here."

[39] Mot. to Dis., p. 8

[40] Answer, Counterclaims ¶ 36.

[41] See Second Amended Standing Order for Immediate Discovery [Doc. No. 2]. "Plaintffs may take immediate discovery on each "Doe" Defendant's Internet Service Provider ("ISP") to obtain the identity of the Doe Defendant, including name, address, telephone number, e-mail address, and Media Access Control addresses for each Defendant."

[42] The Third Circuit has specifically extended the Noerr-Pennington Doctrine to claims of abuse of process, See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 122 (3d. 1999).

competitor.[43] However, in order to prove that Plaintiffs' action is part of a "sham litigation," Defendant must show that (1) the claim is "objectively baseless and (2) the lawsuit must conceal "an attempt to interfere directly with the business relationships of a competitor."[44]

In reference to the first prong of the sham litigation test, the Defendant must show that Plaintiffs' lawsuit is "objectively baseless in the sense that no reasonable litigant would realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr ..."[45] The Third Circuit has determined that some showing of probably cause is a sufficient defense against a sham litigation claim. "Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication.[46]

Plaintiffs have well-pleaded that their protected, copyrighted materials were being shared over a specific IP address that has been identified as belonging to the Defendant. Defendant's retort that Plaintiffs cannot establish that he actually used the computer on the occasion charged in the Complaint does not diminish Plaintiffs' claim that songs were being illegally shared, thereby creating ample probable cause to institute a copyright infringement action. The Court finds that Plaintiffs' Complaint is not "objectively baseless," and that the "sham litigation exception" does not apply.

Because the Court finds that Defendant has not established the first factor of a "sham

---

[43] Cheminor Drugs, 168 F.3d at 122.

[44] Id. at 122.

[45] Prof'l Real Estate Investors v. Columbia Pictures Indus., 508 U.S. 49, 60-61 (1993).

[46] Cheminor, 168 F.3d at 122.

litigation" with regard to Plaintiffs Complaint, it does not need to analyze the second factor to establish Noer-Pennington immunity against the Counterclaim of Abuse of Process.[47] Plaintiffs' Counterclaim of Abuse of Process is barred by the Noerr-Pennington Doctrine and accordingly will be dismissed.

### D.     DOCTRINE OF JUDICIAL IMMUNITY (COUNTS IV AND V)

Defendant also lodges counterclaims of defamation (Count IV) and declaratory judgment (Count V). Plaintiffs argue that each of Defendant's counterclaims should be barred by Pennsylvania's doctrine of judicial immunity; however, the Court will address only the counterclaims for defamation and declaratory judgment in relation to the doctrine. The Pennsylvania courts recognize that "communications made within the regular course of judicial proceedings and which are pertinent and material to the redress of relief sought"[48] are privileged. The Third Circuit has also held as follows:

> The judicial privilege – often referred to, in Pennsylvania, as "judicial immunity"– extends to communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought. The privilege exists because there is a realm of communication essential to the exploration of legal claims that would be hindered were there not the protection afforded by the privilege. Without the protection of the privilege for communications necessary to such exploration, access to the courts would be impaired, witnesses would be intimidated and lawyers' efforts in pursuit of their clients causes would be chilled. Therefore, the privilege (1) only applies to communications, and (2) does not apply to communication not either pertinent and material to the redress or relief sought, or essential to the exploration of legal claims in litigation.[49]

---

[47] See Id. at 122-123. Although the Court is not obligated to analyze the second factor needed to prove a "sham litigation," it is clear that Defendant's argument would also fail to show " "an attempt to interfere directly with the business relationships of a competitor." The Defendant is not a business competitor of Plaintiffs, nor does Defendant claim to be.  Hence, Plaintiffs' Complaint creates no interference in business relationships of either the Defendant or Plaintiffs' business competitors.

[48] Post v. Mendel, 507 A.2d 351, 355 (Pa. Super. Ct. 1991).

[49] Gen. Refractories Co. v. Fireman's Funds Ins. Co., 337 F.3d 297, 312 (3d Cir. 2004).

While it is clear that the doctrine of judicial immunity applies to communications, including court filings, it does not encompass conduct. It is Plaintiffs' <u>conduct</u> as opposed to specific communications that form the basis of Defendant's counterclaims, excepting the counterclaims for defamation and declaratory judgment, which fall under the doctrine of judicial immunity. The counterclaims are based on court communications essential to the underlying redress of relief sought. Defendant claims that Plaintiffs have defamed him by naming the songs illegally downloaded and/or shared in violation of copyright law. However, specifically identifying which copyrighted material was infringed upon is certainly "pertinent and material" to the statutory relief sought by Plaintiffs in the Complaint and therefore protected by judicial immunity.

Moreover, Defendant's counterclaim seeking a declaratory judgment of non-infringement is based on, "Plaintiffs' practice of dismissing claims without prejudice, after accusing defendants of criminal and civil wrongdoing . . . ."[50] Plaintiffs' alleged prior, unrelated court proceedings in which they voluntarily dismissed claims would be protected communication. The Court documents detailing those voluntary dismissals provide the basis for Defendant's claim. As a result, the Court will dismiss Defendant's counterclaims for defamation and declaratory judgment.

### E. CIVIL CONSPIRACY (COUNT VI)

In his last counterclaim, Defendant alleges that Plaintiffs have participated in a civil conspiracy and that the overt acts alleged in furtherance of the conspiracy include the allegations in all counterclaims.[51] He further alleges that Defendant has been damaged by those conspiratorial

---

[50] <u>See</u> Answer, Counterclaims, ¶ 47.

[51] Answer at ¶¶ 53-54.

acts and is entitled to recover those damages as well as collect punitive damages from Plaintiffs jointly and severally.[52]

Defendant bases his counterclaim for civil conspiracy on "the illegal methods described in Counts I, II, III, and IV." The elements required for Trespass to Chattel, Count I, have been analyzed by the Court as actions permitted by federal statute in order for the Plaintiff to show copyright infringement in a file sharing context and are pre-empted by 18 U.S.C. § 1030. Additionally, the Court has analyzed Defendant's counterclaim for computer fraud and abuse, Count II and concluded that Defendant has not properly alleged the statutory elements. Count III for abuse of process has been deemed barred by the Noerr-Pennington Doctrine, and Count IV for Defamation and Count V for Declaratory Judgment are barred under the doctrine of judicial immunity. Because the actions inherent in Counts I, II. III and IV provide the basis for Defendant's civil conspiracy allegations and each has been dismissed by the Court, Defendant has failed to present a claim upon which relief can be granted; Count VI for civil conspiracy is therefore dismissed.

An appropriate Order follows.

---

[52] Answer at ¶¶ 57-58.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MOTOWN RECORD COMPANY, L.P., et al., : : : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 07-CV-4702 |
| : | |
| JOHN C. KOVALCIK, : : : | |
| Defendant. | |

**ORDER**

**AND NOW**, on this 23rd day of February, 2009, upon consideration of Plaintiffs' Motion to Dismiss Defendant's Counterclaims [Doc. 24]; Defendant's Response [Doc. No. 27]; Plaintiffs' Motion For Leave to File a Reply [Doc. No. 30]; Defendant's Objections to Plaintiffs' Response [Doc. No. 31]; Plaintiffs' Response in Support of Leave to File [Doc. No. 32]; and Defendant's Objections to Plaintiff's Response [Doc. No. 34], it is hereby

**ORDERED** that Plaintiff's Motion For Leave to File a Reply is **DENIED**. It is further **ORDERED** that Defendant's Counterclaims are **DISMISSED**.

It is so **ORDERED**.

BY THE COURT:

s/Cynthia M. Rufe

**CYNTHIA M. RUFE, J.**

-15-